# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---

DARYAO S. KHATRI,  )
)
Plaintiff,  )
)
v.  )   Civil Action No. 19-2644 (RBW)
)
BOARD OF TRUSTEES OF THE  )
UNIVERSITY OF THE DISTRICT OF  )
COLUMBIA,  )
)
Defendant.  )

---

## MEMORANDUM OPINION

The plaintiff, Daryao S. Khatri, proceeding pro se, brings this civil action against the

defendant, the Board of Trustees of the University of the District of Columbia (the "Board"),

asserting a claim of retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§§ 2000e to e-17 ("Title VII").  See Complaint ("Compl.") at 1, ECF No. 1-1.  Currently pending

before the Court is the Defendant's Amended Motion for Summary Judgment ("Def.'s Am.

Mot."), ECF No. 59.  Upon careful consideration of the parties' submissions,[1] the Court

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Defendant's Notice of Removal ("Def.'s Notice"), ECF No. 1; (2) the Defendant's Answer and Defenses to Plaintiff's Complaint ("Def.'s Answer"), ECF No. 12; (3) the Plaintiff's Opposition Motion for Summary Judgment ("Pl.'s Opp'n"), ECF No. 33; (4) the Plaintiff's Appendix ("Pl.'s App'x"), ECF No. 38; (5) the Plaintiff's Court Approved Submission to Supplement Record ("Pl.'s Suppl."), ECF No. 56; (6) the Defendant's Amended Memorandum of Law in Support of Its Motion for Summary Judgment ("Def.'s Am. Mem."), ECF No. 59; (7) the Defendant's Amended Statement of Material Facts as to Which There Is No Genuine Issue ("Def.'s Am. Facts"), ECF No. 59; (8) the Declaration of Dominique Jackson in Support of Defendant's Amended Motion for Summary Judgment ("Jackson Decl."), ECF No. 59-1; (9) the Declaration of Anessa Abrams, Esquire, in Support of Defendant's Amended Motion for Summary Judgment ("Abrams Decl."), ECF No. 59-2; (10) the Declaration of Anessa Abrams, Esquire, in Support of Defendant's Amended Motion for Summary Judgment: Part 2 ("Abrams Decl. Pt. II"), ECF No. 59-3; (11) Pro Se Plaintiff's Response to Defendant's Amended Motion for Summary Judgment ("Pl.'s Am. Opp'n"), ECF No. 60; (12) the Plaintiff's Replies to Defendant's Statement of Material Facts ("Pl.'s Am. Facts"), ECF No. 60; (13) the Defendant's Reply Brief in Support of Its Amended Motion for Summary Judgment ("Def.'s Am. Reply"), ECF No. 61; and (14) the Declaration of Anessa Abrams,

(continued . . .)

concludes for the following reasons that it must grant the defendant's motion.

## I.    BACKGROUND

### A.    Factual and Administrative Background

The Court outlined the factual background of this case in its earlier Memorandum Opinion issued on June 11, 2021, and, therefore, will not reiterate every fact contained in that opinion here.  See Khatri v. Bd. of Trs. of the Univ. of D.C. ("Khatri I"), No. 19-cv-2644 (RBW), 2021 WL 2403087 (D.D.C. June 11, 2021) (Walton, J.).  The Court will, however, set forth the facts that remain pertinent to the resolution of the pending motion.

The plaintiff was a full-time physics professor at the University of the District of Columbia (the "University") from 1973, until May 15, 2015, when "he was laid off[.]"  Khatri I, 2021 WL 2403087, at *1; see Def.'s Am. Facts ¶¶ 4, 7; Pl.'s Am. Facts ¶¶ 4, 7.  Throughout his tenure, the plaintiff taught at "the University's College of Arts and Sciences [ ] at the flagship Van Ness campus[,]" Def.'s Am. Facts ¶ 8; see Pl.'s Am. Facts ¶ 8, but not at the University's Community College, see Def.'s Am. Facts ¶ 9; Pl.'s Am. Facts ¶ 9.

Beginning in 2008 and at the time of his layoff in 2015, the plaintiff's employment as a "full-time faculty employee[] holding a permanent appointment from appropriated funds" was governed by a "collective bargaining agreement, entitled Sixth Master Agreement, between the University and the University of the District of Columbia Faculty Association/NEA [(the 'Union']."  Def.'s Am. Facts ¶¶ 22–26; Pl.'s Am. Facts ¶¶ 22–26.

Pursuant to the Management Rights Article of the Sixth Master Agreement, "except where specifically limited by the provisions of th[e Sixth Master] Agreement, the University

_____

(. . . continued)
Esquire, in Support of Defendant's Reply Brief in Support of Its Amended Motion for Summary Judgment ("2d Abrams Decl."), ECF No. 61-1.

retain[ed] the sole right to[,]" <u>inter alia</u>, "hire, assign, and retain faculty; to determine the number of faculty members; and to determine the 'number, types, and grades of positions of faculty members assigned to an organization unit, work project, or tour of duty.'" Def.'s Am. Facts ¶ 28; Pl.'s Am. Facts ¶ 28. And, pursuant to the Reduction-in-Force Article of the Sixth Master Agreement, the University "retain[ed] the sole right, in accordance with applicable laws and rules and regulations . . . . [t]o relieve faculty members of duties because of lack of work or other legitimate reasons." Def.'s Am. Facts. ¶ 29; Pl.'s Facts ¶ 29.

1. **The Plaintiff's Disputes with the Administration Officials of the University Prior to His Termination**

Between 1999 and 2014, the plaintiff, independently or as a member of faculty organizations, engaged in several disputes with officials of the administration of the University, including challenges to certain University hiring decisions. See <u>Khatri I</u>, 2021 WL 2403087, at *1–2. In 1999, the plaintiff challenged the University's appointment of Dr. Beverly Anderson as a provost, claiming that Dr. Anderson's appointment was an illegal hiring practice. See <u>id.</u> at *1. Subsequently, during the 2007–2008 academic year, the plaintiff challenged the decision by Graeme Baxter, who had been appointed as an "acting" provost and Vice President of Academic Affairs, to "unilaterally remov[e] the title 'acting' from her position[.]" <u>Id.</u> (quoting Compl. ¶ 18). Throughout this period, the plaintiff also filed several internal Equal Employment Opportunity ("EEO") complaints with the University's human resources department. See <u>id.</u> at *1–3.

2. **The Plaintiff's Termination and Related Disputes with University Administration Officials**

During the 2014–2015 academic year, the University employed only two full-time physics faculty members—the plaintiff and Dr. Hailemichael Seyoum, see Def.'s Am. Facts ¶ 33; Pl.'s Am. Facts ¶ 33, and all physics courses not taught by them were taught by

adjunct faculty members, see Def.'s Am. Facts ¶ 34; Pl.'s Am. Facts ¶ 34.  Due to the
consistently weak enrollment in its physics degree program in the years prior to 2014, see Def.'s
Am. Facts ¶¶ 36–40; Pl.'s Am. Facts ¶¶ 36–40 (agreeing in relevant part), and in response to the
District of Columbia's City Council's passage of the University of District of Columbia Right-
Sizing Plan Act of 2012, see Def.'s Am. Facts ¶¶ 41–43; Pl.'s Am. Facts ¶¶ 41–43 (agreeing in
relevant part), the University's Board "voted to eliminate the Bachelor of Science degree in
physics," Def.'s Am. Facts ¶ 60; Pl.'s Am. Facts ¶ 60, along with sixteen other academic
degrees, see Def.'s Am. Facts ¶ 61; Pl.'s Am. Facts ¶ 61.[2]  And, according to the defendant, on
June 10, 2014, based on the elimination of those academic degrees, the University concluded that
it did not require full-time faculty members to teach courses in those disciplines.  See Def.'s Am.
Facts ¶ 69.[3]  Accordingly, the University approved a reduction-in-force ("RIF") that impacted
the plaintiff, Dr. Seyoum, and fifteen other full-time faculty members who taught courses in the
now-eliminated academic degree programs.  See Def.'s Am. Facts ¶¶ 79–86; Pl.'s Am. Facts
¶¶ 79–86 (agreeing in relevant part).  Thus, on August 12, 2014, the plaintiff was notified of his
termination, effective May 15, 2015.  See Def.'s Am. Facts ¶ 88; Pl.'s Am. Facts ¶ 88.

Upon the notification of his termination, the plaintiff filed another EEO complaint with
the University's human resources department, claiming that "[m]ost of the faculty who received
[termination letters we]re" (1) "above the age of [sixty or sixty-five;]" (2) "foreign[-]born[;]" (3)
"of color[;]" (4) "of different races[;]" and (5) "in [science, technology, engineering, or
mathematics] disciplines[.]"  Khatri I, 2021 WL 2403087, at *2 (quoting Compl., Exhibit ("Ex.")

---

[2] The plaintiff, as he does elsewhere in his response to the defendant's Amended Statement of Undisputed Material
Facts, "agrees with explanation" regarding the defendant's representations of the Board votes.  See Pl.'s Am. Facts
¶¶ 60–62.

[3] The plaintiff denies this representation, but does not support his denial with any citation to the record or anything
more than conclusory allegations that the Board's actions were "illegal" because the Board "did not follow its own
procedures and [ ] regulations."  Pl.'s Am. Facts ¶ 69.

9 (Narrative of the EEO Complaint by Dr. Daryao S. Khatri) at 1, ECF No. 1-1).

Also following the notification of his termination, the plaintiff continued to participate in activities challenging the University's administration, including an October 2014 resolution by the University Faculty Senate calling for the rescission of the permanent appointment of the Dean of the College of Arts and Sciences, see id. (citing Compl. ¶ 19); and a November 2014 no-confidence vote by the University's Faculty Association against the Acting Provost, Dr. Rachael Petty, see id. (citing Compl. ¶ 20).

Finally, on December 19, 2014, the University's human resources office informed the plaintiff that it had completed its investigation of his October 2014 EEO complaint and concluded that there was insufficient evidence to support his claim.  See id. (citing Compl., Ex. 10 (Letter from W. Brian Ramsay, EO Officer, Univ. of Dist. of Columbia Off. of Hum. Res., to Dr. Daryao S. Khatri (Dec. 19, 2014) at 1, ECF No. 1-1).  Then, on January 16, 2015, the plaintiff filed an EEO complaint form with the District of Columbia's Office of Human Rights. See id. at *3.

### 3. The Plaintiff's Continued Disputes with the University after His Termination

After the plaintiff's termination, he "declined an adjunct faculty position at the University for the Fall 2015 semester[,]" Def.'s Am. Facts ¶ 118; Pl.'s Am. Facts ¶ 118, but nonetheless "has worked as an adjunct faculty member teaching physics at the University every semester since Fall 2016[,]" Def.'s Am. Facts ¶ 119; Pl.'s Am. Facts ¶ 119.  And, since the University eliminated the physics degree program in 2014, it has not offered any degree in physics, see Def.'s Am. Facts ¶¶ 89–91; Pl.'s Am. Facts ¶¶ 89–91, nor has it employed any continuing full-time physics faculty members, see Def.'s Am. Facts ¶¶ 93–94; Pl.'s Am. Facts ¶¶ 93–94.

Although the plaintiff continued to work at the University as an adjunct member of the faculty, his disputes with the University's administration continued.  On November 2018, the

plaintiff filed another EEO complaint with the University's human resource office, alleging that the University had limited his teaching assignments as an adjunct in retaliation for his prior EEO complaints and his participation in challenges to the University's hiring practices.  Khatri I, 2021 WL 2403087, at *3.  And, in December 2018, the plaintiff amended that EEO complaint to include a further allegation that the University retaliated against him by failing to rehire him to his former position.  See id.  After reviewing the plaintiff's complaint, the University concluded in May 2019, that he had not adequately established a violation of university policy.  See id.

Subsequently, on June 6, 2019, the plaintiff filed a formal charge of discrimination with the District of Columbia's Office of Human Rights and the EEOC, indicating that the alleged discrimination took place between November 1, 2018, and May 24, 2019, and attaching his November 2018 EEO complaint. See Def.'s Am. Facts ¶ 251 (citing Compl. ¶ 12; Compl. Ex. 5 (Charge of Discrimination), ECF No. 1-1); Pl.'s Am. Facts ¶ 251.

**B.     Procedural Background**

The Court will not recite the entire procedural history of this long-running matter.  The Court will, however, detail the procedural history to the extent it is relevant to the pending motion that is the subject of this Memorandum Opinion.  On July 31, 2019, the plaintiff initiated this civil action in the Superior Court of the District of Columbia, alleging that the University "retaliat[ed against him] for participating in the discrimination complaints process [and] for opposing any unlawful employment practice[.]"  Id. at 1.  On September 4, 2019, the defendant timely removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446.  See Def.'s Notice at 1, ECF No. 1.  And, on October 7, 2019, the defendant filed its motion to dismiss.  See Defendant's Motion to Dismiss Plaintiff's Complaint at 1, ECF No. 6.

Subsequently, on June 11, 2021, the Court issued its Memorandum Opinion and Order

granting in part and denying in part the defendant's motion to dismiss.  See Order at 1

(June 11, 2021), ECF No. 14; Memorandum Opinion (June 11, 2021), ECF No. 13.  Specifically,

the Court's order declined to dismiss the following claims:

> (1) [the plaintiff's] 1999 opposition to Dr. [Beverley] Anderson's appointment[ as
> Provost]; (2) his October 2014 equal employment opportunity complaint, the
> October 2014 Faculty Senate resolution, and the November 2014 no-confidence
> motion, except to the extent that it is alleged that the defendant retaliated against
> the plaintiff for these activities by terminating his employment in May 2015; (3)
> the defendant's failure to re-hire him after his termination in May 2015; and (4)
> the defendant's actions to terminate physics faculty members.

Order at 1–2 (June 11, 2021).  Then, on April 8, 2022, following several status conferences

regarding the parties' discovery disputes, the Court issued a scheduling order for the filing of the

defendant's motion for summary judgment, see Order at 1 (Apr. 8, 2022), ECF No. 30, which the

defendant filed on July 19, 2022, see Defendant's Motion for Summary Judgment at 1, ECF

No. 32.

Subsequently, on November 6, 2023, after all submissions regarding the defendant's

motion had been filed, the plaintiff filed a motion to supplement the record to include new

information regarding the alleged "hiring of two full-time faculty to teach physics classes during

the 2022-2023 academic year[,]" Plaintiff's Motion for Leave Requesting Permission to File

New Information Related to the Hiring of Full-Time Faculty to Teach Physics Classes at 1, ECF

No. 51, which the Court granted on July 16, 2024, see Order at 3 (July 16, 2024), ECF No. 54.

Having granted the plaintiff's motion to supplement the record, the Court denied without

prejudice the defendant's motion for summary judgment and set a new briefing schedule for the

filing of the defendant's amended motion for summary judgment.  See id. at 3.

In compliance with the Court's scheduling order, the defendant filed its amended motion

for summary judgment on August 27, 2024.  See Def.'s Am. Mot.  On September 8, 2024, the

plaintiff filed his opposition to the defendant's amended motion for summary judgment, <u>see</u> Pl's Am. Opp'n at 1, and on September 24, 2024, the defendant filed its reply in support of its amended motion, <u>see</u> Def.'s Am. Reply.[4]

## II.    STANDARD OF REVIEW

### A.    Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56

A court may grant a Rule 56 motion for summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Steele v. Schafer</u>, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson</u>, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment[.]" <u>Id.</u>  The movant has the burden of demonstrating the absence of a genuine issue of material fact and that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Accordingly, unsupported

---

[4] Separately, on November 5, 2024, the Court denied the plaintiff's second motion to supplement the record in this matter.  <u>See</u> Order at 3 (Nov. 5, 2024), ECF No. 62.

allegations or conclusory statements are not sufficient to defeat summary judgment, see Ass'n of Flight Attendants-CWA v. U.S. Dep't of Transp., 564 F.3d 462, 465–66 (D.C. Cir. 2009); Exxon Corp. v. Fed. Trade Comm'n, 663 F.2d 120, 126–27 (D.C. Cir. 1980) (noting that "[i]t is well settled that [c]onclusory allegations unsupported by factual data will not create a triable issue of fact." (citations and internal quotation marks omitted) (second alteration in original)).  And the non-moving party "must set forth specific facts showing that there [are] genuine issue[s] for trial."  Anderson, 477 U.S. at 256.  Therefore, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party]'s position [is] insufficient[]" to withstand a summary judgment motion; rather, "there must be [some] evidence on which the jury could reasonably find for the [non-movant]."  Id. at 252.

When a non-moving party supports their position via affidavit or declaration, "[it] must set forth . . . specific facts[,]" Ass'n of Flight Attendants-CWA, 564 F.3d at 465 (internal quotation marks omitted), pursuant to Rule 56(e), "that is, it 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated,'" id. (quoting Fed. R. Civ. P. 56(e)(1)).  "Although, as a rule, statements made by the party opposing a motion for summary judgment must be accepted as true for the purpose of ruling on that motion, some statements are so conclusory as to come within an exception to that rule."  Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999); see also Dist. Intown Props. Ltd. P'ship v. District of Columbia, 198 F.3d 874, 878 (D.C. Cir. 1999) ("[T]he court must assume the truth of all statements proffered by the non-movant except for conclusory allegations lacking any factual basis in the record." (emphasis added)).  Therefore, the party opposing summary judgment "must support [their] allegations . . . with facts in the record; a mere unsubstantiated allegation . . . creates no genuine issue of fact and will not

withstand summary judgment[.]"  Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993) (citation and internal quotation marks omitted).

**B.**    <u>Pro Se</u> **Filings**

In applying the above framework, the Court must be mindful of the fact that the plaintiff is proceeding in this matter <u>pro se</u>.  This appreciation is required because the pleadings of <u>pro se</u> parties are "to be liberally construed, and a <u>pro se</u> complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted). Furthermore, all factual allegations by a <u>pro se</u> litigant, whether contained in the complaint or other filings in the matter, should be read together in considering whether to grant a dispositive motion.  See <u>Richardson v. United States</u>, 193 F.3d 545, 548 (D.C. Cir. 1999).

Nonetheless, a "<u>pro se</u> complaint, like any other, must present a claim upon which relief can be granted by the court."  <u>Crisafi v. Holland</u>, 655 F.2d 1305, 1308 (D.C. Cir. 1981).  And "when faced with a motion for summary judgment," a <u>pro se</u> litigant "must comply with the Federal Rules of Civil Procedure and this Court's local rules . . . regarding responding to statements of material fact and marshalling record evidence that establishes each element of his claim for relief[.]"  <u>Hedrick v. Fed. Bureau of Investigation</u>, 216 F. Supp. 3d 84, 93 (D.D.C. 2016) (citations omitted); see <u>McNeil v. United States</u>, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); <u>see also</u> General Order for Civil Cases Before the Honorable Reggie B. Walton (Sept. 9, 2019), ECF No. 5 (explaining the plaintiff's obligations in responding to a motion for summary judgment).  Relevant here, "[a]lthough [a <u>pro se</u> party's] pleadings are read liberally, the same summary judgment standard

applies, notwithstanding [his] pro se status." Parr v. Ebrahimian, 70 F. Supp. 3d 123, 127 n.2

(D.D.C. 2014) (citing Cunningham v. U.S. Dep't of Just., 40 F. Supp. 3d 71, 81 (D.D.C. 2014)).

## III.    ANALYSIS

The defendant argues, inter alia, that it is entitled to summary judgment because (1) the

components of the plaintiff's retaliation claims relating to actions taken before August 10, 2018,

are "barred by his failure to file a timely Charge of Discrimination[,]" Def.'s Am. Mot. at 1; see

Def.'s Am. Mem. at 8; at (2) the "[p]laintiff's claim that he was not permitted to work as an

adjunct faculty member teaching classes in disciplines other than physics after he was laid off in

May 2015" was not administratively exhausted because it "is beyond the scope of his

administrative charge[,]" Def.'s Am. Mot. at 1; and (3) the plaintiff's remaining claim that the

University's failure to re-hire him as a full-time physics faculty member between August 10,

2018, and his filing of his EEO Charge, fails to state a claim, see id.  The Court will address the

defendant's arguments in turn.

## A.    Whether Any of the Plaintiff's Claimed Retaliatory Acts Are Time-Barred

As indicated above, the defendant argues that because the plaintiff did not file his Charge

of Discrimination until June 6, 2019, the components of his retaliation claims relating to actions

taken before August 10, 2018, are time-barred.[5]  See Def.'s Am. Mem. at 8.  The plaintiff did not

respond to the defendant's timeliness argument in his opposition, see generally Pl.'s Am. Opp'n,

and therefore the defendant argues that the Court should treat the argument as conceded, see

Def.'s Am. Reply at 8 (citing Groshans v. Del Toro, No. 21-cv-3004 (TSC), 2024 WL 4056516,

---

[5] The Court notes that the defendant did not raise its timeliness argument in its prior motion to dismiss in this case. However, the plaintiff has not objected to the defendant's timeliness argument on waiver grounds, and assuming arguendo that he had made such an objection, the Court would conclude that the defendant has not waived the argument.  See Lilly v. District of Columbia, 657 F. Supp. 3d 65, 85 (D.D.C. 2023) (concluding that the defendant had not waived its Title VII timeliness argument by first raising it in its summary judgment motion and not in its prior Rule 12(b)(6) motion).

at *4 (D.D.C. Sept. 5, 2024)).  While the Court agrees that it could treat this argument as

conceded due to the plaintiff's failure to address the argument in his amended opposition, he did

respond to this argument in his initial opposition to the defendant's first motion for summary

judgment, see Pl.'s Opp'n at 10, so the Court will therefore address the arguments out of an

abundance of caution and in light of the plaintiff's pro se status.

"Title VII '[c]omplainants must timely exhaust the[ir] administrative remedies before

bringing their claims to court.'"  Payne v. Salazar, 619 F.3d 56, 65 (D.C. Cir. 2010) (alterations

in original) (quoting Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997)).  "In the

District of Columbia, [ ] an EEOC charge must be filed within 300 days of the date of the

allegedly discriminatory/retaliatory act."  Duberry v. Inter-Con Sec. Sys., Inc., 898 F. Supp. 2d

294, 298 (D.D.C. 2012); see 42 U.S.C. § 2000e-5(e)(1); Craig v. District of Columbia, 74 F.

Supp. 3d 349, 361 (D.D.C. 2014) ("Ordinarily, . . . a plaintiff alleging a violation of Title VII

must file an EEOC charge within 180 days of the date that the allegedly discriminatory

[or retaliatory] act occurred[; however,] [i]n the District of Columbia . . . a 'worksharing

agreement' between the EEOC and the [District's Office of Human Rights ('DCOHR')] results

in the automatic cross-filing of an EEOC complaint with the [DCOHR], thereby extending the

filing deadline for plaintiffs in the District to 300 days." (citing 42 U.S.C. § 2000e-5(e)(1);

Carter v. George Wash. Univ., 387 F.3d 872, 879 (D.C. Cir. 2004))).

Moreover, "[e]ach incident of discrimination [or retaliation] . . . constitutes a separate

actionable 'unlawful employment practice[,]'" Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S.

101, 114, (2002), and "starts a new clock for filing charges alleging that act[,]" id. at 113.  Thus

"[t]o be actionable, a discrete act—an event that takes place at a particular point in time—must

occur within the filing period," Dickens v. Dep't of Consumer & Regul. Affs., 298 F. App'x 2, 3

(D.C. Cir. 2008) (internal quotation marks omitted), and "discrete discriminatory [or retaliatory] acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges," Morgan, 536 U.S. at 113.

Here, it is undisputed that the plaintiff filed his Charge of Discrimination on June 6, 2019.  See Def.'s Am. Facts ¶ 251; Pl.'s Am. Facts ¶ 251.  Thus, absent legal authority to the contrary, any of the components of the plaintiff's retaliation claims that relate to actions taken more than 300 days prior to that date, i.e., August 10, 2018, are time-barred.  See 42 U.S.C. § 2000e-5(e)(1).  The plaintiff, without providing any legal authority in support of his position, summarily argues that "the [C]ourt should consider that tenured faculty employees are not 'clerical/at-will' employees; there is no such thing as quick (in days or months) 'tit-for-tat' action in an institution of higher learning when it comes to tenured faculty employees."  Pl.'s Opp'n at 10.  Thus, according to the plaintiff, because "[t]enured faculty have lifetime appointments[,]" "any retaliatory action is measured in 'astronomical units' and not in days or months."  Id. at 10–11.  However, these unsupported and conclusory positions do not create a genuine dispute of material fact.  See Ass'n of Flight Attendants-CWA, 564 F.3d at 465–66; Exxon Corp., 663 F.2d at 126.[6]  Thus, the Court concludes that the defendant is entitled to summary judgment on the components of the plaintiff's retaliation claims regarding actions allegedly taken before August 10, 2018.

Accordingly, the only remaining claims that are not time-barred are: (1) the plaintiff's claims relating to limitations on his teaching non-physics courses as an adjunct faculty member

---

[6] Although the plaintiff filed a complaint form with the DCOHR in 2015, the substance of that complaint remains unclear from the plaintiff's Complaint and filings, and he does not argue that the claims in his 2019 Charge of Discrimination relate back to any prior filing with the DCOHR or EEOC and should accordingly be backdated to the date of those prior filings.  Indeed, his Charge of Discrimination expressly notes that the earliest date of discrimination took place on November 1, 2018.  See Compl., Ex. 5 (EEO Charge) at 1.

in the Fall 2018 semester; (2) the University's alleged failure to re-hire the plaintiff between August 10, 2018, and the filing of his EEO Charge; and (3) the plaintiff's claims relating to limitations on his teaching physics courses as an adjunct faculty member in the Fall 2018 semester.

**B.      Whether the Plaintiff Properly Exhausted His Claims Relating to Limitations on His Teaching Non-Physics Courses as an Adjunct Faculty Member in the Fall 2018 Semester**

The defendant next argues that the plaintiff did not administratively exhaust the components of his retaliation claims relating to the University's limitations on his teaching non-physics courses as an adjunct faculty member in the Fall 2018 semester because they were outside the scope of his EEO Complaint.  Def.'s Am. Mem. at 10–11.  As concluded above, while the plaintiff failed to respond to this argument in his amended opposition, the Court will not treat it as conceded and will instead address the arguments made in his prior opposition, i.e., his argument that he properly exhausted these components by filing an internal complaint with the University's EEO office.  See Pl.'s Opp'n at 15–16.

Title VII's "administrative charge requirement serves the important purposes of giving the charged party notice of the claim and 'narrow[ing] the issues for prompt adjudication and decision.'"  Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995) (quoting Laffey v. Nw. Airlines, Inc., 567 F.2d 429, 472 n.325 (D.C. Cir. 1976), cert. denied, 434 U.S. 1086 (1978)).  Thus, "[a] Title VII lawsuit following [an] EEOC charge is limited in scope to claims that are 'like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations.'"  Id. (quoting Cheek v. W. & S. Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994)).  Additionally, "it is true that the administrative charge requirement should not be construed to place a heavy technical burden on 'individuals untrained in negotiating procedural labyrinths,'" id. (quoting Loe v. Heckler, 768 F.2d 409, 417 (D.C. Cir. 1985)), but "it is also true that 'the

requirement of some specificity in a charge is not a mere technicality,'" id. (quoting Rush v. McDonald's Corp., 966 F.2d 1104, 1111 (7th Cir. 1992)).  Therefore, "[w]hile a complainant need not describe every factual detail of [his] claim to satisfy the exhaustion requirement, [he] cannot file a 'vague or circumscribed EEOC charge' and expect that charge to 'satisfy the exhaustion requirement for claims it does not fairly embrace.'"  Craig, 74 F. Supp. 3d at 365 (quoting Marshall v. Fed. Express Corp., 130 F.3d 1095, 1098 (D.C. Cir. 1997)).

Here, the plaintiff's EEOC charge clearly represents that "[s]ome of the instructors who have been hired to teach physics on an adjunct basis do not even have credentials in physics, but they are teaching 5–7 courses per semester[,]" whereas "[o]n the other hand, [the plaintiff] ha[s] been limited to teach only two courses per semester[,]" despite "the fact that [he] ha[s] a Ph.D. in physics and ha[s] taught at the university on a full-time basis for over 40 years."  Compl., Ex. 5 (EEOC Charge) at 4 (emphasis added).  Indeed, the plaintiff's requested remedy in his EEOC charge is "[e]qual treatment in the teaching assignment of physics courses beginning in January 2019 and an eventual reinstatement to [his] previous position with back pay and benefits."  Id. (emphasis added).  The plaintiff's EEOC charge contains no further allegations of unequal course assignment outside the context of the allegedly unequal assignment of physics courses. Thus, while the plaintiff argues that his EEOC charge in "no place [ ] states that [his] request [was] limited to physics[,]" Pl.'s Opp'n at 15, that assertion is clearly contradicted by the "overall silence in the administrative charge documents as to" non-physics assignments, and the "absence of any indication that [the plaintiff] raised those claims in any other charge or amendment to [his] charge[,]" Perez v. Dist. of Columbia Dep't of Emp. Servs., 305 F. Supp. 3d 51, 60 (D.D.C. 2018).  Given that silence, the Court must conclude that the allegations regarding teaching assignments of non-physics courses are not "fairly embrace[d]" by his EEOC Charge.

Craig, 74 F. Supp. 3d at 365 (quoting Marshall, 130 F.3d at 1098).  Accordingly, the Court

concludes that the plaintiff failed to exhaust these allegations, and thus, the defendant is entitled

to summary judgment on these components of the plaintiff's retaliation claims.

**C.    Whether the Defendant Is Entitled to Summary Judgment on the Plaintiff's Remaining Claims**

Having concluded that many of the plaintiff's allegedly retaliatory acts are either time-

barred or were not properly exhausted, the Court now turns to the plaintiff's remaining claims

that: (1) the University retaliated against him by failing to re-hire him as a full-time faculty

member teaching physics between August 10, 2018, and the filing of his EEO Charge; and (2)

the alleged limitations on his teaching physics courses as an adjunct faculty member during the

Fall 2018 semester.

Title VII prohibits employers from retaliating against an employee because the employee

"has opposed any practice made an unlawful employment practice by [Title VII.]"  42 U.S.C.

§ 2000e–3(a).  Where, as here, a plaintiff's retaliation claims brought pursuant to title VII are

based on circumstantial evidence, the McDonnell Douglas burden-shifting framework applies.

See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05 (1973).

Under this framework, the plaintiff bears the initial burden of establishing a prima facie

case of retaliation by showing that "(1) he 'engaged in statutorily protected activity'; (2) [the

defendant] took 'a materially adverse action' against him; and (3) his protected activity was the

but-for cause of that adverse action."  Ho v. Garland, 106 F.4th 47, 51 (D.C. Cir. 2024); see

McDonnell Douglas, 411 U.S. at 802.  Once a prima facie case is established, the burden then

shifts to the employer, who must articulate some legitimate and non-retaliatory reason for its

actions.  See Walker v. Johnson, 798 F.3d 1085, 1091 (D.C. Cir. 2015).  If the employer satisfies

this burden, the plaintiff must then provide proof that the proffered reason was a pretext for

retaliation and must produce "sufficient evidence for a reasonable jury to find that the employer's asserted [ ] non-retaliatory reasons was not the actual reason and that the employer intentionally [ ] retaliated against the employee." Id. at 1092 (internal quotation marks omitted).

This Court need not necessarily address whether the plaintiff has established a prima facie case because "the question whether the employee made out a prima facie case . . . is almost always irrelevant[.] [ ] [B]y the time [a] district court considers an employer's motion for summary judgment . . . the employer ordinarily will have asserted a legitimate, non-discriminatory reason for the challenged decision." Jones v. Bernanke, 557 F.3d 670, 678 (D.C. Cir. 2009) (second alteration in original) (internal quotation marks removed) (quoting Brady v. Off. of Sgt. at Arms, 520 F.3d 490, 493 (D.C. Cir. 2008)).  Indeed, "[n]ot only is the prima facie case irrelevant at this point, but '[the Court] need not—and should not—decide whether the plaintiff actually made out a prima facie case under McDonnell Douglas.'" Id.  However, "[b]oth the courts of this District and subsequent panels of the D.C. Circuit have recognized that proceeding to the Brady analysis may be premature when the defendant contests whether an adverse employment action occurred at all."  Wilson v. Noem, No. 20-cv-100 (GMH), 2025 WL 1000666, at *14 (D.D.C. Apr. 3, 2025) (listing cases).

Here, the defendant appears to concede that the alleged limitation on the plaintiff's course load in physics constitutes a materially adverse action, see Def.'s Am. Mem. at 26–27 (mentioning the plaintiff's alleged materially adverse actions and failing to dispute the limit on his teaching of physics classes), and therefore the Court will proceed directly to the second step of the McDonnell Douglas framework and determine whether the defendant has articulated some legitimate and non-retaliatory reason for its limitation on the plaintiff's course load in physics. However, because the defendant does dispute that the plaintiff has established that the

University's failure to re-hire the plaintiff constituted a materially adverse action, the Court will first address this argument.

1. **The University's Alleged Failure to Re-Hire the Plaintiff as a Full-Time Faculty Member Teaching Physics Between August 10, 2018, and the Filing of His EEO Charge**

As indicated above, the defendant argues that it is entitled to summary judgment on this remaining claim because the plaintiff has failed to establish a prima facie retaliation claim. See Def.'s Am. Mem. at 41. Specifically, the defendant argues that the plaintiff (1) "did not engage in protected activity under Title VII[,]" id.; (2) "was not subjected to a materially adverse action[,]" id.; and (3) has not established a "causal connection" between any protected activity and any allegedly materially adverse action, id. at 42. Although the plaintiff again fails to expressly address these arguments in his most recent submission, he previously argued that he has adequately established a prima facie retaliation claim that the University's failure to re-hire him constituted retaliation for his protected activity. See Pl.'s Opp'n at 45–46.

As indicated above, "[t]o prove unlawful retaliation, [the plaintiff] must show that (1) he 'engaged in statutorily protected activity'; (2) [the defendant] took 'a materially adverse action' against him; and (3) his protected activity was the but-for cause of that adverse action." Ho, 106 F.4th at 51. An act is materially adverse if it objectively "would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination[.]'" Baloch v. Kempthorne, 550 F.3d 1191, 1198 (D.C. Cir. 2008) (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

Assuming arguendo that the plaintiff engaged in statutorily protected activity, the Court must conclude that the defendant is nonetheless entitled to summary judgment on these remaining claims because the plaintiff has not established a prima facie case that the University's failure to re-hire him after 2018 constituted a materially adverse action. The defendant

represents, and the plaintiff does not dispute, that "[s]ince the reduction-in-force, all physics classes have been taught by temporary faculty." Def.'s Am. Facts ¶ 96; see Pl.'s Am. Facts ¶ 96. Indeed, it is undisputed that the plaintiff "declined an adjunct faculty position at the University for the Fall 2015 semester[,]" Def.'s Am. Facts ¶ 118 (citation omitted); Pl.'s Am. Facts ¶ 118, but "has worked as an adjunct faculty member teaching physics at the University every semester since Fall 2016[,]" Def.'s Am. Facts ¶ 119; Pl.'s Am. Facts ¶ 119.

Although the plaintiff contends that the University hired two full-time faculty members to teach physics during the 2022–2023 academic year, this fact does not support his position for several reasons. First, the defendant has provided the declaration of Dominique Jackson, the "Manager of Talent Acquisition[ in] the University's Office of Human Resources[,]" Jackson Decl. ¶ 2, which represents that the plaintiff "did not apply for the Visting Professor of Natural Science" position for the 2022–2023 academic year, id. ¶ 8. In response, the plaintiff does not meaningfully dispute that he did not apply for the position, but rather alleges that the defendant was aware of his availability and interest in teaching physics courses because he "on several occasions emailed the deans about his interest in teaching at the community college" between 2018 and 2020. Pl.'s Am. Opp'n at 4; see id. at 5–6 (providing purported screenshots of those communications). However, it is well established in this district that "[i]ndividuals who never applied for a position generally cannot bring a Title VII claim against an employer who failed to hire them for that position[,]" Brigida v. Chao, No. 16-cv-2227 (DLF), 2020 WL 12848947, at *2 (D.D.C. Apr. 5, 2020) (listing cases); cf. Stoyanov v. Winter, 643 F. Supp. 2d 4, 13 (D.D.C. 2009) (concluding that the "plaintiff cannot even establish a prima facie case of discriminatory or retaliatory failure to promote if he did not apply for the position"). Thus, although the plaintiff may have communicated his interest in teaching at the community college years prior to the

listing of the position at issue, these communications do not present a genuine dispute as to whether he in fact applied for the position.

Second, although the plaintiff failed to apply for the position, he can nonetheless still establish a prima facie claim for failure to hire—or, as here, re-hire—if he can establish that "applying would have been futile because members of [his] protected class were subject to gross and pervasive discrimination" or that the "employer filled the position without soliciting applications[,]" Carroll v. England, 321 F. Supp. 2d 58, 67, 68 (D.D.C. 2004) (internal quotation marks omitted). However, the plaintiff does not allege that applying for the position would have been futile. Instead, the plaintiff appears to argue that the defendant's hiring for this position failed to comply with its own hiring procedures and that the defendant did not adequately advertise the hiring for the position. See Pl.'s Am. Opp'n at 4–5. However, the Jackson Declaration represents that the position "was posted internally on the University's website and posted on Google Jobs, Indeed, and LinkedIn[,]" Jackson Decl. ¶ 6; that "[e]leven candidates applied for the position[,]" id. ¶ 7; and that, as noted already, the plaintiff was not one of the applicants for the position, see id. ¶ 8. Despite the plaintiff's attempts to characterize the exhibits to the Jackson Declaration as "fluff" and "not even legible[,]" Pl.'s Am. Opp'n at 4, the plaintiff has not provided any evidence to dispute the Jackson Declaration's representations, and therefore, the Court credits the declaration. Thus, the plaintiff has not established that applying for the position would have been futile.

Having concluded that the plaintiff has failed to establish that there was a position available that he applied to and was denied, the Court concludes that the plaintiff has not established that the defendant's failure to re-hire him constituted a materially adverse action. Thus, the Court concludes that the plaintiff has not established a prima facie claim of retaliation

20

based on the University's alleged failure to re-hire him, and accordingly, the defendant is entitled to summary judgment on this claim.

### 2. The Alleged Limitations on the Number of Physics Courses the Plaintiff Could Teach as an Adjunct Faculty Member During the Fall 2018 Semester

Finally, the Court addresses the plaintiff's claim that the defendant retaliated against him for his protected activity by limiting the number of physics courses he was permitted to teach as an adjunct faculty member during the Fall 2018 semester. As indicated above, the defendant does not dispute that this alleged limitation was a materially adverse action, and thus, the Court will proceed directly to determining: (1) whether the University has articulated some legitimate and non-retaliatory reason for its actions, see Walker, 798 F.3d at 1091; and (2) if so, whether the plaintiff had produced "sufficient evidence for a reasonable jury to find that the [defendant's] asserted [ ] non-retaliatory reasons was not the actual reason and that the [defendant] intentionally [ ] retaliated against the [him,]" id. at 1092 (internal quotation marks omitted).[7]

The defendant has asserted a legitimate, non-retaliatory reason for the limitations on the plaintiff's physics teaching assignments as an adjunct professor during the Fall 2018 semester. Specifically, the defendant represents that, "between 2015 and 2018, the University did not have a policy regarding the number of classes an adjunct faculty member could teach," and nor did the collective bargaining agreement governing adjunct faculty contain any such policy. Def.'s Am. Mem. at 29 (citing Def.'s Am. Facts ¶¶ 99, 101, 104, 106). Instead, according to the defendant, "[t]he assignment of classes to adjunct faculty is a management right[,]" id. (citing Def.'s Am. Facts ¶¶ 102, 105), and that in practice, adjunct faculty at the University's College of Arts and

---

[7] Although the defendant argues that the plaintiff's claims relating to the Fall 2018 semester are "questionable as being timely given that the Fall semester typically starts in mid-August[,]" Def.'s Am. Mem. at 9 n.2 (citing Def.'s Am. Facts ¶ 32), the defendant has not provided undisputed evidence that the claim is in fact time-barred, and thus the Court will address this component of the plaintiff's retaliation claim.

Sciences have "typically [taught] two or three courses per semester to respect the different expectations between full-time and part-time faculty as it relates to work and compensation[,]" id.  The defendant further represents that "the determination of the assignment of classes to adjunct faculty . . . is based on a number of factors, including but not limited to type of class, student group to be instructed, availability of work, and the desire to keep associated lab classes with the instructor who is teaching the lecture class."  Id. at 29–30 (citing Def.'s Am. Facts ¶¶ 107–08).  Although the defendant notes that there may be exceptions to this practice based on the University's assessment of "how to best address the needs of students[,]" id. at 30 (citing Def.'s Am. Facts ¶ 109), it argues that "there is a legitimate business reason for the number of classes assigned to adjunct faculty" at the College of Arts and Sciences, see id.  In further support of its position that it applied consistent practices to adjunct faculty, the defendant provided statistics for the Fall 2018 semester, which the plaintiff does not dispute, showing that the plaintiff and three other adjunct faculty members each taught two physics courses at the College of Arts and Sciences, while Hailemichael Seyoum—"the other full-time physics professor who was laid off effective May 2015"—taught four courses: two lecture classes and two associated lab courses.  Id. at 30–31 (citing Def.'s Am. Facts ¶¶ 112–13); see Pl.'s Am. Facts ¶¶ 112–13.  Consequently, the Court must consider whether the plaintiff has produced sufficient evidence for a reasonable jury to infer that the reason provided by the defendant for these limitations on the plaintiff's physics instruction course load is pretextual and that the real reason for the limitations was retaliation for the plaintiff's protected EEO activity.  See Walker, 798 F.3d at 1092.

The plaintiff fails to meaningfully address the defendant's legitimate, non-retaliatory reason for its physics course assignments in his opposition to the defendant's amended motion

for summary judgment. However, in his opposition to the defendant's original motion for summary judgment, he appears to argue that the reasons provided by the defendant are pretextual because Dr. Souheil Ghannouchi, an adjunct faculty member at the University's community college and not at the College of Arts and Sciences, taught more physics classes than the plaintiff during the plaintiff's tenure as an adjunct faculty member. See Pl.'s Opp'n at 37–38. Even accepting as true the plaintiff's arguments made in his original opposition, "[t]o raise an inference of retaliation based on comparator evidence, a plaintiff must establish that 'all of the relevant aspects of [his] employment situation' are 'nearly identical to those of [another] employee.'" Peternel v. Duffy, No. 23-670 (BAH), 2025 WL 3012687, at *14 (D.D.C. Oct. 28, 2025) (quoting Holbrook v. Reno, 196 F.3d 255, 261 (D.C. Cir. 1999)) (internal quotation marks omitted). The plaintiff's mere contention that he and Dr. Ghannouchi "are similarly situated because they teach or have taught physics and other courses[,]" Pl.'s Opp'n at 38, without more, does not create such an inference, in light of the undisputed differences between the University's College of Arts and Sciences and its community college, see Def.'s Am. Facts ¶¶ 12, 14–15 (noting different deans for each school); Pl.'s Am. Facts ¶¶ 12, 14–15, as well as undisputed differences between the plaintiff's history as a faculty member at the College of Arts and Sciences and Dr. Ghannouchi's history teaching only at the Community College and only as an adjunct faculty member, both before and after the reduction in force, see Def.'s Am. Facts ¶¶ 120–22; Pl.'s Am. Facts ¶¶ 120–22. Thus, the plaintiff has failed to establish that "all of the relevant aspects of [his] employment situation' [were] 'nearly identical to those of" Dr. Ghannouchi, and therefore he has failed to raise an inference of retaliation. See Peternel, 2025 WL 3012687, at *14.

Accordingly, because the plaintiff has failed to rebut the defendant's legitimate, non-retaliatory reasons for assigning the plaintiff two physics courses during Fall 2018 by providing evidence of pretext, the Court must grant the defendant's motion for summary judgment as to this final claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the defendant's motion for summary judgment.

**SO ORDERED** this 5th day of December, 2025.[8]

REGGIE B. WALTON
United States District Judge

---

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.